UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DMITRIY V. NOVIKOV,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.    C07-5415BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for August 22, 2008 |

Plaintiff, Dmitriy V. Novikov, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Benjamin H. Settle's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 60 years old.[1] Tr. 40. He completed high school in Russia and has past work experience as a potato sorter or packing line worker. Tr. 24, 67, 86, 328.

On September 13, 2004, plaintiff filed applications for disability insurance and SSI benefits,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1  alleging disability as of October 31, 2002, due to type II diabetes, high blood pressure, hemorrhoids,
2  obesity, arthritis in both legs, and heart problems. Tr. 62-63, 66, 242-45.  His applications were denied
3  initially and on reconsideration. Tr. 40-42, 47, 246-48, 252.  A hearing was held before an administrative
4  law judge ("ALJ") on December 27, 2006, at which plaintiff, unrepresented by counsel, appeared and
5  testified, as did two lay witnesses. Tr. 323-41.

6  On March 9, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding
7  specifically in relevant part:

   (1)  at step one of the sequential disability evaluation process,[2] plaintiff had not
        engaged in substantial gainful activity since his alleged onset date of disability;

   (2)  at step two, plaintiff had a "severe" impairment consisting of diabetes mellitus,
        type II;

   (3)  at step three, none of plaintiff's impairments met or equaled the criteria of any
        of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

   (4)  at step four, plaintiff had the residual functional capacity to perform light work,
        with additional postural limitations, which did not preclude him from
        performing his past relevant work.

Tr. 13-25.  Plaintiff's request for review was denied by the Appeals Council on June 18, 2007, making the
ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481.

On August 10, 2007 plaintiff filed a complaint in this Court seeking review of the ALJ's decision.
(Dkt. #1-#3, #5).  The administrative record was filed with the Court on November 27, 2007. (Dkt. #12).
Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of
benefits or, in the alternative, for further administrative proceedings for the following reasons:

   (a)  the ALJ erred by failing to ensure plaintiff a fair hearing;

   (b)  the ALJ erred in assessing plaintiff's residual functional capacity;

   (c)  the ALJ erred in evaluating the lay witness evidence in the record; and

   (d)  the ALJ should have found him disabled at step five of the sequential disability
        evaluation process.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set
forth below, recommends that while the ALJ's decision should be reversed, this matter should be

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Erred in Failing to Fully and Fairly Develop the Record

The ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). When a claimant is unrepresented, furthermore, "the ALJ must be especially diligent in exploring for all the relevant facts." Id. As noted above, at the administrative hearing in this case, plaintiff appeared and testified without counsel. Plaintiff argues that because it is clear from the hearing transcript he was not fluent in English, because his answers generally were incomprehensible and because it was uncertain he understood the questions posed to him, the ALJ should have required the aide of the translator who was present at the meeting to ensure creation of a good record. The undersigned agrees.

At the beginning of the hearing, an exchange took place between the ALJ and plaintiff, which reads in relevant part:

> ALJ: . . . We have present today to provide the services of a translator, interpreter, Ms. Anzaila -- . . .
>
> ALJ: -- Genserick. . . .
>
> ALJ: . . . Mr. Novikov, . . . You were notified in your Notice of Hearing that you had a right to be represented by an attorney or other individual of your choice. Did you look into trying to find a lawyer?
>
> CLMT: No.
>
> ALJ: You speak English?

| | | |
|---|---|---|
| 1 | CLMT: | Yes. |
| 2 | ALJ: | Okay. Then why do we have an interpreter? |
| 3 | CLMT: | My wife doesn't speak. |
| 4 | ALJ: | Okay. |
| 5 | CLMT: | And sometimes I get broken in my speech. |
| 6 | ALJ: | Okay. |
| 7 | CLMT: | I don't know some special words. |
| 8 | ALJ: | All right. I suggest that you and I proceed in English. And if you have any difficulty we'll ask the interpreter. |
| 9 | CLMT: | Uh-huh. Sure. . . . |
| 10 | . . . | |
| 11 | CLMT: | -- if I don't know what, I'll tell my wife and it's -- |
| 12 | ALJ: | Okay. Well, then we'll just have her interpret everything. Okay. |
| 13 | CLMT: | Have her to do everything. . . . |
| 14 | . . . | |
| 15 | INT: | The interpreter wants to ask. Did you say then I have to interpret everything? |
| 16 | ALJ. | Yes. Just for the benefit of the spouse. . . . |

Tr. 325-26. Defendant argues this shows the plaintiff requested the interpreter mostly for the benefit of his wife, and that, in response, the ALJ asked the interpreter to "interpret everything." Thus, defendant asserts, the interpreter fully participated in the hearing, thereby defeating plaintiff's claim here.

Although this is what the ALJ stated was going to happen, an examination of the hearing transcript indicates, as pointed out by plaintiff, that this did not in fact occur. There are, as plaintiff notes, a number of times where plaintiff's responses to the ALJ's questions did not make a lot of sense, and which the ALJ himself indicated he was having trouble understanding. Take the following exchange, for example, which reads in relevant part:

Q    Well what brought you to Seattle? . . .

. . .

A    I, I had some temporary work and, and the, the diabetes stopped me. And I'm, I'm -- and that I'm alleging. And that I, but it was wasn't really begin steady. I, I was still to be able to work on some duty. But when arthritis got me, I, I

REPORT AND RECOMMENDATION
Page - 4

| | | |
|---|---|---|
| 1 | | stopped heavy duty. And since that time I don't work. I don't work for the last three years, up through -- yeah. I was at my last job -- |
| 2 | Q | I'm sorry. And what about the last job in -- |
| 3 | A | -- in Pendia. |
| 4 | Q | Sir, I asked you -- |
| 5 | A | I try to see, it's the stuff that's a little diregious (phonetic)? |
| 6 | Q | I little? |
| 7 | A | I don't want to -- is there a special -- is there -- |
| 8 | Q | Well, go ahead. I thought there was -- |
| 9 | A | Yeah. . . . |

Tr. 327-28. In another example, in response to whether he was on a diabetic diet, plaintiff responded:

> Yeah. I try. But when, when I, I try to tell the truth, then my income was fair. I could, I could hold my diet. Now, it's more difficult for me as much.

Tr. 329. When asked if he had any reports from his physician, plaintiff stated:

> Yeah. I, I -- as I told you, I, I've got to subjects for my, my -- and just five days ago I got subject on my throat. It was sleep apnea. I'm still, I'm still under strong pain killers which --

Tr. 330. The ALJ later inquired if surgeries plaintiff had undergone were performed at Tacoma General Hospital, to which plaintiff responded:

> No. Surgery at Pen yak. At that one. And surgery for the apnea at the agency at the University. The University. The University at 45 Street, in Tamaqua, and you and Boss Street.

Tr. 331.

The hearing transcript contains many further examples. For instance, in response to the question as to where he had arthritis, plaintiff stated:

> As, as soon as I get digious (phonetic) I, I talk to you. I, I am made next year that has struck me, it's -- it happens in April, 2002.

Tr. 332. The hearing transcript also contains the following exchange:

| | | |
|---|---|---|
| | Q | Okay. How do you spend your time? What do you do all day? |
| | A | Oh, if, if I feel myself let down, I , I console him for finding it. |
| | Q | You do what? |
| | A | Go for something to the store for, for some kind of food, for finding it. And to |

REPORT AND RECOMMENDATION
Page - 5

| | | |
|---|---|---|
| 1 | | follow what I have to say with doctor. So I get a lot of, lot of juice and things. |
| 2 | Q | Your daughters live with you? |
| 3 4 | A | One of them lives with me and another one in the hospital. We, we are taking from home for 30 days, and to send her back to hospital again for 30 days with that then. |
| 5 | Q | And what, what is involved in caring for the daughter who lives with you? |
| 6 7 | A | Just so supposed to we need, we need to be guard because of mental illness. If, if you're awake and doing anything. They, they can, they can make a lot of damage. |
| 8 | Q | A lot of what? |
| 9 | A | Damage, post, feels, or, or do something extra mouth for -- everything. |
| 10 | Q | Do you do any -- |
| 11 | A | If there is a -- it's rare like me as kind of. We doing afraid now. |
| 12 | Q | I, I don't understand what you're saying? |
| 13 14 | A | The daughters are afraid of me, so I have to guard them more and care about them more. When mother, for example, where sometime is mother, is, is where, where sometimes afraid for them. I can, I, I -- as a result I can vouch for it. |
| 15 | Q | You, you can do what with them? |
| 16 | INT: | Guard them, watch them. |
| 17 | ALJ: | Guard them. Yeah. |

Tr. 333-34. As a final example, the ALJ asked plaintiff if he did anything for exercise, to which plaintiff responded:

> No, I stopped to do any exercise after psychiatrist told me. I did them before. I, I fold my game. And it's, it's -- I tried to stroke then. I stuck to this because I got a lot of pain in my for it's --

Tr. 335.

It is difficult to believe plaintiff's testimony was translated by the interpreter, for, as can be seen above, much of it consists of broken English which is difficult to decipher to say the least. Rather, what most likely occurred here was that the interpreter translated the ALJ's questions and comments for the benefit of plaintiff's wife, but not the testimony of plaintiff himself. This is further evidenced by the fact that the interpreter jumped in at the end of plaintiff's testimony regarding his daughters as set forth above, and by the fact that the testimony of plaintiff's wife was much more easily understood, indicating that her

1  testimony, unlike plaintiff's, was translated by the interpreter. See Tr. 341.  Clearly, the interpreter would
2  not have had to do jump in and translate plaintiff's testimony that he had to guard or watch his daughters if
3  she had been translating plaintiff's testimony all along.
4        To the extent the interpreter actually had been translating plaintiff's testimony, furthermore, that
5  translation the undersigned finds to be unacceptably defective, as much of what plaintiff said cannot be
6  understood.  Indeed, the ALJ himself appeared to have just as much difficulty doing so.  Accordingly, the
7  hearing transcript indicates plaintiff was unable to adequately make himself understood, and, as such, the
8  record as a whole cannot be said to be complete.  Other evidence in record, although mixed, gives at least
9  some indication as well that plaintiff had less than a complete ability to communicate effectively in
10 English with his medical sources (see Tr. 192, 195, 198, 203), which further calls into question his ability
11 to make himself understood at the hearing.  Remand to the Commissioner is needed, therefore, for a new
12 hearing at which an interpreter should be provided to translate plaintiff's testimony.

13 II.      <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

14       If a disability determination "cannot be made on the basis of medical factors alone at step three of
15 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and
16 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A
17 claimant's residual functional capacity assessment is used at step four to determine whether he or she can
18 do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>Id.</u>  It
19 thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

20       A claimant's residual functional capacity is the maximum amount of work the claimant is able to
21 perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work
22 must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only
23 those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a
24 claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-
25 related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the
26 medical or other evidence." <u>Id.</u> at *7.

27       In this case, the ALJ assessed plaintiff with the residual functional capacity "to perform light work
28 with additional postural limitations." Tr. 20.  In regard to the latter, the ALJ found plaintiff had "postural
restrictions due to occasional dizziness including not climbing ladders, scaffolds and ropes, no work at

REPORT AND RECOMMENDATION
Page - 7

unprotected heights, and only occasional climbing of ramps and stairs." Tr. 21. Plaintiff argues the ALJ erred here, asserting that the medical evidence and testimony in the record indicates he does not have the residual functional capacity to perform even sedentary work. Specifically, plaintiff asserts in relevant part:

> . . . The record supports the fact that Mr. Novikov could not possibly perform anything less than sedentary work . . . Both of his feet are numb, he has chronic left sided pain in his leg, knee and foot, and lower back, he has anxiety, he has shortness of breath with almost any activity, he has significantly disturb [sic] sleep requiring him to take naps during the day. . . .
> The record supports the fact that Mr. Novikov's diabetes is uncontrolled by medication. He states that his diabetes, sleep apnea, and arthritis in the extremities and lower back are the most constantly bothersome impairments. It was these impairments that caused him to finally quit as a potato sorter in 2002. Now this condition has worsened. Mr. Novikov had subjective complaints of fatigue, shortness of breath and drowsiness, left sided pain in the knee, left leg and numb feet. . . . His sleep apnea disrupted his sleep throughout the night which meant that he napped for one hour daily . . . His pain in his lower back and arthritis in all extremities, shortness of breath, fatigue, [and] anxiety contribute to his inability to maintain the persistence and pace necessary for substantial gainful activity.

(Dkt. #15, pp. 10-11).

Plaintiff, however, both overstates the medical evidence in the record regarding his impairments and symptoms, and fails to show his impairments and symptoms have resulted in work-related limitations greater than those found by the ALJ. First, much of the evidence plaintiff points to is based on his own subjective complaints. The ALJ, though, determined plaintiff to be not fully credible concerning those complaints and their affect on his ability to work (Tr. 21-22), and plaintiff has not specifically challenged that determination. In addition, the medical evidence in the record simply does not support a finding that plaintiff is unable to do even less than sedentary work as argued by him. Of the three physicians in the record who opined as to plaintiff's residual functional capacity, for example, two found plaintiff to be capable of essentially light work (see Tr. 149-56, 203), and the third found he could perform sedentary work (see Tr. 158). The ALJ, furthermore, provided adequate reasons for discounting the latter physician's opinion, which finding, again, plaintiff does not specifically challenge:

> I considered a DSHS physical evaluation completed in February 2003 by Mohammed Osman, M.D., in February 2003 [sic] . . . In the . . . evaluation, he listed the claimant's diagnoses as type II diabetes, hypertension, arthritis, obesity and hemorrhoids, and checked a box indicating the claimant was capable of sedentary work. In support of the claimant's limitations, he noted decreased range of motion on forward bending . . . Dr. Osman's opinion is not persuasive. As noted, there is no indication that he was a treating physician of the claimant. Further, he provides no narrative explanation for his limitation to sedentary work and the only objective finding was decreased range of motion on forward bending. Without more, such a restrictive limitation to sedentary work is not warranted. There is no other opinion of record supporting sedentary work.

> Dr. Osman's conclusory opinion is therefore afforded little weight in the residual functional capacity determination.

Tr. 23; see . Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of physician if it is brief, conclusory, and inadequately supported by clinical findings or by record as whole); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

As to plaintiff's complaints of pain in his back and left leg, knee and foot, the medical evidence in the record fails to support limitations more severe than those found by the ALJ. While plaintiff had some complaints of left heel and knee pain in early November 2002, physical examination findings at the time were largely unremarkable. Tr. 179-80. In mid-December 2002, plaintiff was limited only to no heavy lifting due in part to his knee pain. Tr. 300. In early December 2004, furthermore, plaintiff had only "trace edema" in his feet and ankles, had no effusion, and minimal to moderate laxity and no tenderness in his left knee, and showed little or no deficits with respect to his coordination, station, gait, and motor strength. Tr. 201. No medical source in the record other than that from Dr. Osman – which the ALJ properly rejected as discussed above – limited plaintiff to less than light work activity because of plaintiff's pain or, as noted by the ALJ, or for any of his other symptoms.

With respect to plaintiff's alleged arthritis, the medical evidence in the record, in addition to failing to reveal more significant work-related limitations in his back and lower left extremity, also does not show plaintiff had problems with his upper extremities. For example, in early December 2004, examination of plaintiff's hands revealed a lack of any tremor or muscle wasting, and he "was able to close his fingers into a complete fist and extend them fully." Tr. 201. Grip and upper extremity strength was full as well. Id. In late June 2006, plaintiff was found to exhibit no muscular or joint pain, weakness, stiffness, swelling, or inflamation in any of his extremities. Tr. 306. No medical source in the record has opined that plaintiff has any manipulative limitations due to arthritis or any other physical impairment. See Tr. 152, 203.

Plaintiff's allegations that he has significant limitations due to sleep apnea, shortness of breath and significantly disturbed sleep are also without support in the medical evidence in the record. Although the record shows plaintiff has probable sleep apnea (see Tr. 170, 215, 237), no medical source has noted any specific work-related limitations as a result thereof. Plaintiff reported in late May 2003, that he was having trouble getting enough air (Tr. 169), but no work-related limitations were noted. In early

REPORT AND RECOMMENDATION
Page - 9

1 December 2004, it was reported that plaintiff had at most only "mild difficulty breathing" due in part to his
2 sleep apnea. Tr. 200, 202. Problems with shortness of breath again were in early April 2005, but, once
3 more, there was no indication of any specific work-related limitations. Tr. 279. Indeed, in late June 2006,
4 plaintiff reported being "able to walk five blocks and two flights of stairs without any difficulty, and he
5 denied "having any shortness of breath." Tr. 305.

6 In regard to plaintiff's claim that his diabetes is uncontrolled by medication, the evidence, although
7 somewhat mixed, largely indicates otherwise. Thus, for example, his diabetes was found to be controlled
8 in mid-October 2002. Tr. 182. In early November 2002, plaintiff himself reported that his blood sugar was
9 "well controlled." Tr. 179. Plaintiff's diabetes was still found to be controlled in early March 2003,
10 despite his report at the time that he did not follow a diabetic diet "for the last month," had "gained some
11 weight" and "did not exercise regularly." Tr. 174. While plaintiff was diagnosed with diabetes in early
12 Decmeber 2004, no work-related limitations were specifically noted to have resulted therefrom by the
13 examining physician. Tr. 202. Although plaintiff's diabetes was noted to be "poorly controlled" in late
14 May 2006 (Tr. 277), in late June 2006, it was noted to be "managed . . . on oral medications" (Tr. 232).

15 As to the allegations of numb feet, plaintiff did report having experienced numbness in his feet in
16 late May 2003. Tr. 169. However, he further reported that the numbness went away after a few days. Id.
17 The physical examinations in the record, furthermore, fail to reveal much, if any, in the way of objective
18 medical evidence of such numbness. See, e.g., Tr. 306, 316. Indeed, in early December 2004, sensation
19 specifically was noted to be intact in both plaintiff's hands and his feet. Tr. 201. Nor, as revealed by the
20 discussion herein, does the objective medical evidence in the record show there to have been a worsening
21 of plaintiff's condition as he has claimed, or that his fatigue has resulted in an inability to do even less than
22 sedentary work. See Tr. 172-73.

23 Lastly, with respect to plaintiff's claim that his anxiety has contributed to his inability to maintain
24 the persistence and pace necessary for substantial gainful activity, again, the objective medical evidence in
25 the record simply does not support this. In early December 2004, plaintiff "categorically denied" having
26 any psychiatric symptoms or problems, and stated that he did not really understand why he was having to
27 undergo a psychiatric evaluation. Tr. 192-93. No problems with persistence or pace were noted at the
28 time, and the evaluator did not see plaintiff's anxiety symptoms significantly interfering with his ability to

work. Tr. 195-96. Plaintiff was diagnosed with moderate anxiety by another physician in early December 2004, as well, but again no limitations on persistence or pace were opined. Tr. 202-03. At most, only moderate limitations in those areas or supported by the record. See Tr. 141, 145-47.

Accordingly, the undersigned finds the above-stated reasons put forth by plaintiff for asserting that the ALJ erred in assessing his residual functional capacity to be without merit. Nevertheless, because this matter is being remanded to obtain further testimony from plaintiff at a new hearing, and, as discussed in further detail below, to re-evaluate the lay witness evidence in the record, if on remand, such testimony and evidence calls into question the ALJ's assessment of plaintiff's residual functional capacity, that issue shall be re-considered by the Commissioner as well. If, in turn, that assessment of plaintiff's residual functional capacity is found to be erroneous, then the Commissioner shall re-consider the ALJ's determination at step four, and if necessary proceed on to step five, of the sequential disability evaluation process.

III.   The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In addition to plaintiff's wife, plaintiff's son also appeared and testified at the hearing. See Tr. 337-39. Plaintiff argues the ALJ did not want to ask any questions of plaintiff's son. However, this is not true, as the ALJ clearly did pose questions to him regarding plaintiff's ability to return to work and differences he saw in plaintiff's daily behavior. See id. While plaintiff does recognize the ALJ did ask plaintiff's son at least some questions at the end of the hearing, he asserts the ALJ erred in not giving any weight to his son's testimony that his health started to decline five years ago, that he could not continue to work on a

consistent basis despite his strong work ethic, and that he complained constantly about his aches and pains. See id. The undersigned disagrees.

The ALJ gave the following reasons for discounting the testimony of plaintiff's son:

> I have also considered the lay testimony of the claimant's son that his father cannot work; however, it is not supported by the thorough examination of the claimant's medical records and activities of daily living discussed above. Again, there are doubtless motivational issues to provide support to add claimant to the financial support rolls of the government. It is appropriate in this regard to consider the motivation and relationship of the witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence. . . . It is not inappropriate to discount testimony of witness if it is motivated by a desire to see claimant obtain benefits. . . .

Tr. 24. As discussed above, the objective medical evidence in the record does not support a finding that plaintiff is unable to perform even less than sedentary work. As such, the ALJ did not err in discounting the testimony of plaintiff's son that plaintiff is unable to work. In addition, earlier in his decision, the ALJ made the following findings regarding plaintiff's activities:

> The claimant's reported activities . . . do not support his allegations of severe functional limitations. For example, despite his contention that he cannot work and can only walk and stand for 15 minutes, the claimant reported . . . that he performed household chores including cutting the grass, grocery shopping, and taking family members to appointments and that he and his wife were active in their church and attended services three to four times per week . . .

Tr. 22. This is another germane reason for rejecting the testimony of plaintiff's son.

While the evidence in the record does indicate some motivational and/or secondary gain issues that call plaintiff's own credibility into question (see Tr. 22, 336), nothing in the record clearly shows plaintiff's son was motivated by the same financial considerations. Indeed, plaintiff's son testified that because of the close-knit nature of Russian families, he would watch and see if he could help his father, even though he would be starting his own family. Tr. 338. This hardly evinces a desire to add plaintiff to the support rolls of the government.[3] Nevertheless, while the undersigned does not find this to be a germane reason for not giving weight to the testimony of plaintiff's son, as discussed above, the ALJ did provide two other valid reasons for rejecting it.

---

[3]The undersigned notes defendant's citation to Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), in which the Ninth Circuit upheld the ALJ's decision to discount lay witness evidence in that case in part because that witness had a "close relationship" with the claimant and "was possibly 'influenced by her desire to help [him],'" which were found to be "germane" to her. Id. at 972. While the Court of Appeals' language in Greger cannot be disputed, again it is noted that no actual evidence of such possible influence was been presented here. Regardless, the undersigned need not rely on this basis for upholding the ALJ's finding here, for, as discussed above, the ALJ already provided two valid reasons for discounting the testimony of plaintiff's son.

REPORT AND RECOMMENDATION
Page - 12

The undersigned does find, however, that the ALJ erred in not giving any reasons for not adopting the testimony of plaintiff's wife. At the hearing, plaintiff's wife testified as follows in regard to plaintiff:

> Since he has trouble sleeping, he's not sleeping the whole night. And he an [sic] only fall asleep for about two hours in the morning. Then he wakes up and he's not able to do the full time job, since he did not sleep. But did not rest well. And since the surgery I have to take care of him because he's very weak.

Tr. 341. Defendant argues the ALJ did not err in failing to address this testimony, because an examining physician in the record whom the ALJ relied on in part to find plaintiff capable of performing light work, accounted for plaintiff's sleeping difficulties. See Tr. 22, 202-03. Thus, any error on the part of the ALJ here, plaintiff asserts, is harmless, as no reasonable ALJ considering such testimony would have reached a different disability determination. Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where irrelevant to ALJ's ultimate disability conclusion). The undersigned, however, cannot say for sure that consideration of the testimony of plaintiff's wife would not have made any difference to the ultimate outcome of this matter, despite the apparent dearth of medical evidence in the record supporting the allegations that plaintiff is unable to work. Accordingly, remand to re-consider this evidence is appropriate here as well.

IV.     Step Five of the Sequential Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

Plaintiff argues that he is a person of "advanced age" (i.e., age 55 or older), who has a limited, less than a high school, education because he attended school in Russia and is not fluent in English, whose past work has been unskilled work, and who is limited to less than sedentary work. Thus, by analogy, plaintiff asserts he meets the requirements for being found disabled under Grid Rule 201.04. Pursuant to Grid Rule 201.04, a claimant is deemed disabled if he or she is of advanced age, has achieved a high school or greater education, has no past work or only past unskilled work, and who has a maximum sustained work

1  capacity to perform limited to sedentary work.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.4.  As discussed
2  above, however, the evidence in the record does not support a limitation to sedentary or less than sedentary
3  work.  Accordingly, the ALJ was not required to find plaintiff disabled under this Grid Rule.
4  V.     <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>
5          The Court may remand this case "either for additional evidence and findings or to award benefits."
6  <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,
7  except in rare circumstances, is to remand to the agency for additional investigation or explanation."
8  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in
9  which it is clear from the record that the claimant is unable to perform gainful employment in the national
10 economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>
11         Benefits may be awarded where "the record has been fully developed" and "further administrative
12 proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d
13 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because
of the need for a new hearing with an interpreter to translate plaintiff's testimony, and because issues still
remain in regard to the testimony of plaintiff's wife, this matter should be remanded to the Commissioner
for further administrative proceedings.  If, on remand, the testimony of plaintiff and his wife demonstrates
that the ALJ's assessment of plaintiff's residual functional capacity was improper, the Commissioner shall
re-determine whether plaintiff can return to his past relevant work at step four of the sequential disability
evaluation process, and, if necessary, whether he is capable of performing other jobs existing in significant
numbers in the national economy at step five.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff
was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

---

[4]Likely, plaintiff meant to refer to Grid Rule 201.01, which reads the same as Grid Rule 201.4, but which requires only a limited or less education. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.01.

further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 22, 2008**, as noted in the caption.

DATED this 24th day of July, 2008.

Karen L. Strombom
United States Magistrate Judge